**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

--------------------------------- x
ONICA J. VICTORY, :
:
Plaintiff, :
:
v. :
:
TREASURY RETAIL SECURITIES SERVICES, BUREAU OF THE FISCAL SERVICE, DEPARTMENT OF THE TREASURY, INTERNAL REVENUE SERVICE, TREASURY OFFICE OF INSPECTOR GENERAL, SOCIAL SECURITY ADMINISTRATION, UNITED STATES CORP., AND UNITED STATES, : Civil No. 3:25-cv-2034 (AWT)

Defendants.
--------------------------------- x

## RULING ON MOTION TO DISMISS

For the reasons set forth below, the defendants' motion to dismiss is being granted.

## I. FACTUAL ALLEGATIONS AND BACKGROUND

On October 14, 2025, the plaintiff "submitted [two] coupons for payment as money orders for accommodation under ens legis entity for payment" to Treasury Retail Securities Services ("TRSS"). Compl. (ECF No. 1) at 1. The coupons are each in the amount of $27,250.00, made payable to the order of the plaintiff's Treasury Direct account. See Compl. Ex. A. The coupons state, in relevant part:

**For: Howard University, Washington DC Fall 2025**

> **(2025-2026 Academic Year)**
>
> For presentation to the United States Treasury, Fiscal Agent of the United States, for redemption or in exchange for securities of new issue, in accordance with instructions submitted by Onica J. Victory. . . **Instructions:** For issuance of new securities in the form of federal reserve notes to be deposited into Treasury Direct Account [ ].

Id. The coupons include the plaintiff's student identification number, name, and home address. They also reference the Uniform Commercial Code ("UCC") and several federal statutes relating to, inter alia, banking, finance, commerce, and trade.

On October 22, 2025, TRSS sent the plaintiff a letter stating that the documents "indicate[] participation in a fraudulent scheme." Compl. Ex. B. The letter notified the plaintiff that TRSS:

> DOES NOT make payments to individuals who have not first purchased securities from [TRSS] using money from their payroll or bank account. Any request to the Secretary of Treasury for a discharge of debt, through a Bill of Exchange or other instrument, indicates participation in fraudulent scheme that you have been misinformed about. . . . [C]ontrary to any story that you may have heard, your Birth Certificate is NOT a security, and therefore there are not any government funds to which you are entitled because you were born in this country. This is a fraudulent scheme and continuing to pursue this in any way can lead to fraud charges, and/or in the least, have your Treasury/Direct Account with [TRSS] locked.

Id.

TRSS also placed an "administrative hold on

plaintiff’s account that they will not remove[].” Compl. at 1.

On December 5, 2025, the plaintiff, proceeding pro se, filed a Complaint asserting four claims: “Redress for Defamation of Character” (see Compl. II); “Claim to Held Securities and Estate Rights” (see Compl. III); “Request for Full Accounting” (see Compl. IV); and “Notice of Constructive Fraud and Usury” (see Compl. V).

## II. LEGAL STANDARD

### A. Subject Matter Jurisdiction

“A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court ‘lacks the statutory or constitutional power to adjudicate it[.]’” Cortlandt St. Recovery Corp. v. Hellas Telecomm., 790 F.3d 411, 416-17 (2d. Cir. 2015) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)). The party asserting subject matter jurisdiction “bears the burden of proving subject matter jurisdiction by a preponderance of the evidence.” Aurechione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005). When reviewing a motion to dismiss for lack of subject matter jurisdiction, the court may consider evidence outside the pleadings. See Makarova, 201 F.3d at 113. In fact, “the court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings, such

as affidavits." Antares Aircraft, L.P. v. Fed. Republic of Nigeria, 948 F.2d 90, 96 (2d Cir. 1991).

**B. Failure to State a Claim**

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). See also Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 86 (2d Cir. 2015) ("[T]he court must assume the factual allegations in the complaint to be true, 'even if [they are] doubtful in fact'. . . ." (citation omitted)). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "On a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]'" Id. (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

"Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557). "Factual allegations must be enough to raise a right to

relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (internal quotation marks omitted). However, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Id. at 547. "A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

In its review of a motion to dismiss for failure to state a claim, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transport Local 504, 992 F.2d 12, 15 (2d Cir. 1993).

When interpreting the allegations in a pro se complaint, the court applies "less stringent standards than [those applied

to] formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). See also Branham v. Meachum, 77 F.3d 626, 628-29 (2d Cir. 1996). Furthermore, the court should interpret the plaintiff's complaint "to raise the strongest arguments [it] suggest[s]." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). "Nonetheless, a pro se complaint must state a plausible claim for relief." Walker v. Schult, 717 F.3d 119, 124 (2d Cir. 2013)(citations omitted).

## III. DISCUSSION

### A. Defamation

The United States, as sovereign, is immune from suit unless it waives immunity and consents to be sued. See Cooke v. United States, 918 F.3d 77, 81 (2d Cir. 2019). One such waiver of sovereign immunity is provided by the Federal Tort Claims Act ("FTCA"), which allows for a tort suit against the United States under specified circumstances. See 28 U.S. Code §§1346(b), 2671-2680. The FTCA permits plaintiffs in federal court to sue for money damages:

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S. Code § 1346(b)(1).

However, the FTCA expressly excludes claims for libel, slander, and misrepresentation from its limited waiver of sovereign immunity. See 28 U.S. Code § 2680(h). In Schweitzer. v. Dep't of Veterans Affs., the court dismissed a claim by a former VA employee alleging damage to his professional reputation. No.3:99CV02148, 2001 WL 237195, at *1 (D. Conn. Feb. 21, 2001). The court concluded that the "plaintiff's claims for defamation and tortious interference are specifically excluded by the statute . . . Thus, the court does not have jurisdiction over the plaintiff's FTCA claim for defamation." Id. at *3. The same is true here.

In her Objection to the Motion to Dismiss, the plaintiff seeks relief under the "stigma plus" doctrine, which in limited circumstances provides a remedy for government defamation in violation of the federal Due Process Cause. See Obj. Mot. Dismiss (ECF No. 17) at 5. "To prevail on a 'stigma plus' claim, a plaintiff must show (1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." Sadallah v. City of Utica, 383 F.3d 34, 38 (2d Cir. 2004) (internal quotations and citations omitted).

However, the plaintiff has not alleged facts sufficient to

state such a claim. For a statement to be sufficiently derogatory, "[t]he act of defamation requires publication – to the public – of such statements." Spinale v. U.S. Dep't of Agric., 621 F. Supp. 2d 112, 118 (S.D.N.Y.), aff'd sub nom. Spinale v. U.S. Dep't of Agr., 356 F. App'x 465 (2d Cir. 2009). Here, TRSS's letter was not published; it was sent only to the plaintiff. "Private correspondence between [a government agency] and Plaintiffs cannot, by definition, be defamatory—even if the letter is untrue." Id.

Moreover, TRSS's refusal to process fraudulent coupons is not an "impairment of a legal right or status" that constitutes a material state-imposed burden. Id. TRSS has the authority to, inter alia, close Treasury Direct accounts and suspend transactions. See 31 CFR § 363.29. It also has the authority to "[t]ake any other action with regard to any account that [it] deem[s] necessary, if not inconsistent with existing law and existing rights." Id. The denial of fraudulent money orders falls well within that authority.

In her Objection, the plaintiff also asserts that TRSS's denial of her fraudulent money orders constitutes a final "agency action" subject to judicial review under the Administrative Procedure Act ("APA"). See Obj. Mot. Dismiss at 5; 5 U.S. Code §§ 551–559. Section 702 of the APA provides for a waiver of sovereign immunity in certain circumstances. However,

"a plaintiff seeking to invoke § 702's waiver must also satisfy other requirements of the APA, including . . . § 701's provision that excludes 'agency action [that] is committed to agency discretion by law.'" Pacnet Services Ltd. v. Office of Foreign Assets Control of the United States Department of the Treasury, 521 F. Supp. 3d 181, 203 (E.D.N.Y. 2021). Here, TRSS's governing regulation provides: "We reserve the right to take any of the following actions if, in our sole discretion, we deem the action to be in the best interests of the United States." 31 CFR § 363.29. As discussed above, actions within TRSS's sole discretion include refusing to open an account, closing an existing account, suspending transactions with respect to an account, or taking "any other action with regard to any account that [it] deem[s] necessary, if not inconsistent with existing law and existing rights." Id. Consequently, it was within TRSS's discretion to deny the plaintiff's fraudulent money orders and place an administrative hold on her account, and TRSS's action is not subject to judicial review under the APA.

Therefore, this claim is being dismissed.

**B. Remaining Claims**

The remaining claims are: "Claim to Held Securities and Estate Rights," "Request for Full Accounting," and "Notice of Constructive Fraud and Usury." See Compl. at 2-3. The apparent premise of these claims and language used throughout the

Complaint suggest that the plaintiff is advancing a "sovereign citizen" argument. The Second Circuit has explained that "sovereign citizens are a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior." United States v. Ulloa, 511 F. App'x 105, 107 n.1 (2d Cir. 2013). "Federal courts across the country [] have routinely refused to credit arguments based on a redemption, sovereign citizen, or other similar theory because the arguments are often frivolous, irrational and unintelligible." Tyson v. Clifford, No. 3:18CV1600(JCH), 2018 WL 6727538, at *3 (D. Conn. Dec. 21, 2018). See also Dieujuste v. Sin, 731 F. Supp. 3d 440, 454 (E.D.N.Y.), aff'd, 125 F.4th 397 (2d Cir. 2025), cert. denied, 146 S. Ct. 119, 223 L. Ed. 2d 25 (2025) ("When claims are, as here, premised on a plaintiff's rights as a 'sovereign citizen,' those claims are dismissed as frivolous and for failure to state a claim.").

Courts have identified the telltale characteristics of a sovereign citizen claim. One strain of sovereign citizen claim is based on a theory of "redemption." See, e.g. Gravatt v. United States, 100 Fed. Cl. 279, 283 (2011) (internal citations omitted) (describing the so-called redemption process as one in which self-identified sovereign citizens seek to collect money from the government by "fil[ing] one or more UCC financing

statements naming themselves as both the secured party and the debtor, with the intent to register a security interest in [a] fictitious entity that was created by [their] birth certificate and other government documents.”). In Kauapirura v. United States Dep't of the Treasury Internal Revenue Serv., the court noted that sovereign citizen claims contain characteristic phrases, including, inter alia, “’sui generis’ ‘nonperson.’” No. 23-CV-6167 (DG)(LB), 2023 WL 7687700, at *1 (E.D.N.Y. Oct. 5, 2023). The court also noted that the plaintiff attached documents relating to “her birth certificate and social security card, and UCC financing statements.” Id. See also United States v. Bommer, 613 F. Supp. 3d 712, 717 (W.D.N.Y. 2020) (finding the plaintiff’s repeated references to other individuals as “corporations” to be characteristic of sovereign citizen claims).

Here, the Complaint contains the typical characteristics of a sovereign citizen claim. The apparent premise of each of the plaintiff’s claims is that she is owed money based on the issuance of a birth certificate, social security number, or other identifying document. Also, the plaintiff repeatedly refers to herself as “Sui Generis,” states that she is “not a corporate person,” and asserts a “right to self-identification as a private being under divine, natural, and common law, U.C.C. $ 1-103.” Compl. at 5-6. These references make clear that the

plaintiff is raising the kind of sovereign citizen claim that courts have "routinely refused to credit . . . because the arguments are often frivolous, irrational and unintelligible." Tyson v. Clifford, No. 3:18CV1600(JCH), 2018 WL 6727538, at *3 (D. Conn. Dec. 21, 2018). This is true of the Complaint here.

Therefore, the remaining claims are being dismissed.

**IV. CONCLUSION**

For the reasons set forth above, the Motion to Dismiss (ECF No. 15) is hereby GRANTED. The Complaint is being dismissed without leave to amend because the deficiency with respect to the defamation claim cannot be remedied and the remaining claims are frivolous.

It is so ordered.

Dated this 5th day of November 2026, at Hartford, Connecticut.

/s/AWT
Alvin W. Thompson
United States District Judge